UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

       *Plaintiff*,

v.         Case No. 3:20-cr-018
       Judge Thomas M. Rose

**Anthony Ferguson**,

       *Defendant*.

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS. DOCS. 19, 29.**

---

Pending before the Court are Defendant Anthony Ferguson's Motion to Suppress. Doc. 19, 29. Ferguson was charged with possession with intent to distribute fentanyl. He seeks to suppress evidence in the Government's possession.

**I.  Background**

On December 27, 2019, postal inspectors stopped a package that had been sent from Shirley Ferguson, 5577 North Aster Street, San Bernardino, California 92407 to Demeri Ferguson, 225 Gramont Avenue, Dayton, Ohio 45417. (R. 32, Transcript of 4/28/2021 Motion to Suppress Hearing, PageID 158-160). Multiple factors caused postal inspectors to be suspicious of the package: known drug source location, crossed off and rewritten recipient name, handwritten label,

recipient zip code known to receive narcotic packages, use of Priority Mail service, cash payment, and excessive taping. (Id. at PageID 160; 175-176; R. 36, Transcript of 7/1/2021 Motion to Suppress Hearing, PageID 231-235). After pulling the package from the mail stream, postal inspectors reviewed the sender and recipient through the CLEAR database. (R. 32 at PageID 160-161; R. 36 at PageID 235-236). Neither name was associated with their respective address and the street listed by the sender does not technically exist (there is no North Aster Street – only an Aster Street). (R. 32 at PageID 161; R. 36 at PageID 236). After confirming the names and addresses did not exist in CLEAR, postal inspectors called for a K9 to conduct a free air sniff on the package. (R. 32 at PageID 162).

Montgomery County Sheriff's Office Deputy Bemis and K9 Jax conducted the free air sniff on the package after it had been pulled from the mail stream. (Id.). The free air sniff was conducted in a room with other packages, and Deputy Bemis was not told which package was the suspect package. (Id. at 163). Jax gave a positive alert to the suspect package, and Deputy Bemis completed an affidavit, which was then attached to a search warrant for the package. (Id.]

On December 27, 2019, postal inspectors submitted for a federal search warrant, which was authorized. (Id. at PageID 168, Government's Exhibit 2). However, the search affidavit for the package contained an error: the affidavit read San Diego California with a corresponding zip code rather than the package's actual sender city of San Bernardino California with its corresponding zip code. (Id. at PageID 165). This mistake occurred when agents typed over an old search warrant affidavit and failed to change the city and zip code. (Id. at PageID 165).

After obtaining a search warrant, postal inspectors opened the package and observed a unicorn and rainbow, gift-wrapped package with a Merry Christmas card as well as a pair of pink

2

slippers. (Id. at PageID 169). Inside the gift-wrapped package was a box for a toddlers' toy, which contained within it a saran-wrapped, duct-taped, brick-shaped object. (Id. at PageID 170-171; R. 36 at PageID 247). The brick-shaped object was consistent with narcotics packaging, and it field-tested positive for cocaine. (R. 32 at PageID 170-172). Later, the United States Postal Inspection Service Laboratory confirmed the narcotics to be fentanyl. (Id. at PageID 172, R. 36 at PageID 275).

On December 30, 2019, postal inspectors obtained a tracking warrant for a GPS and light sensor device as well as an anticipatory search warrant with the intent to conduct a controlled delivery of the package with the narcotics substituted out for fake drugs. (R. 36 at PageID 248-252). During the controlled delivery, Postal Inspector Yenger acted in an undercover capacity as a letter carrier and delivered the package with the sham drugs to 225 Gramont Avenue in Dayton while other postal inspectors and task force officers conducted surveillance. (Id. at PageID 254-255).

Five minutes after the package was delivered, a male, later identified as the defendant Anthony Ferguson, exited the residence at 225 Gramont Avenue, picked up the package and re-entered the residence. (Id. at PageID 255). The defendant then exited the residence, entered a vehicle that was parked in the driveway and drove in an apparent countersurveillance manner before returning to the address. (Id. at PageID 256-257). After returning to the residence, the defendant was on his cellular phone before departing the area again for approximately 45 minutes. (Id.).

Defendant then returned to the residence, entered the residence, and the light sensor device inside the package alerted that the package had been opened. (Id. at PageID 258). Law enforcement

3

entered the residence and cleared the vehicle in their approach. (Id. at PageID 259, 267-268). Postal Inspector Rossiter observed the back door of the residence open but no one emerged after Inspector Rossiter advised "Police." (Id. at PageID 259-260). Upon entering the residence of 225 Gramont Avenue, defendant was the sole occupant. (Id. at PageID 260).

In the kitchen, law enforcement located the package and its contents. (Id. at PageID 261). The package had been opened, the contents removed and unwrapped, and the sham narcotics removed from inside the gift-wrapped inner box. (Id. at PageID 262-265). Law enforcement also located a digital scale, a personal use amount of marijuana, and a firearm within the residence. (Id. at PageID 265-266). A cellular phone was recovered from the vehicle parked in the driveway which defendant had been observed driving during surveillance. (Id. at PageID 266). While clearing the vehicle, law enforcement observed the cellular phone was open to the Ring doorbell camera and showed the front of the residence which indicated that defendant had been watching the front of his residence while away from the residence. (Id. at PageID 267- 268).

Following advisement of his *Miranda* rights, Anthony Ferguson was questioned and stated he did not know Shirley Ferguson or anyone in San Bernardino, California and was curious to know what was in the package. (Id. at PageID 269-270). Anthony Ferguson acknowledged that the package had a name that was similar to his teenage son's but not spelt the same. (Id.).

A second search warrant was obtained for the cellular phone. (Id. at PageID 271). At this point, postal inspectors noticed the error in the city and zip of the sender's address in the previous affidavits and corrected it as well as noted the error for the magistrate judge in a footnote. (Id. at PageID 272-273).

On December 31, 2019, a complaint was filed charging Anthony T. Ferguson with

4

violation of 21 U.S.C. §§ 846 and 841(a)(l) and (b)(l)(A) - conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl. Doc. 4. On March 13, 2020, Ferguson filed a motion to suppress any and all evidence seized from his person, property and/or residence, in addition to any statements he made. Doc. 19. On April 22, 2021, a supplemental motion sought suppression of evidence seized from his automobile, including the Samsung telephone, and any evidence recovered from it. Doc. 29.

**II.     Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "It has long been held that first-class mail such as letters and sealed packages subject to letter postage ... is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970). Noting that first class mail is nevertheless "not beyond the reach of all inspection," the Sixth Circuit has held "that 'only reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog.'" *United States v. Alexander*, 540 F.3d 494, 500-01 (6th Cir. 2008) (quoting *Van Leeuwen*, 397 U.S. at 251 (internal quotation marks omitted); *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004)).

"To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotation marks omitted) (citation omitted). "Whether this standard is met depends on the totality of the circumstances ...." *United States v. Elbe*, 774 F.3d 885, 889 (6th Cir. 2014)

(citation omitted). "The review of the sufficiency of evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Ray*, 577 Fed. Appx. 526, 531 (6th Cir. 2014) (citation omitted).

In general, the Fourth Amendment does not require police to obtain a warrant to search an automobile when probable cause exists to believe it contains contraband or evidence of criminal activity. *California v. Carney*, 471 U.S. 386, 392-93 (1985). This so-called "automobile exception"—stems from both the inherent mobility of motor vehicles and the reduced expectation of privacy that result from their pervasive regulation. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1966). Even if a vehicle's mobility is temporarily restricted or potential drivers have been secured, warrantless searches are still legally valid. *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007). The "automobile exception" applies even in non-exigent circumstances, and regardless whether the officer's decision to stop the vehicle may have been pre-textual. See *United States v. Cope,* 312 F.3d 757, 775 (6th Cir. 2002).

As a threshold matter, Ferguson does not have standing to challenge the seizure or search of the package because he does not have a privacy interest in the package. Ferguson must establish both that he has a subjective expectation of privacy in the package, and that society is willing to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). Ferguson cannot meet this.

Anthony Ferguson's name does not appear on the package. The package does not bear his name: the sender's name is not his and the recipient's name is not his. Furthermore, Ferguson has not asserted that he was the intended recipient of the package. Indeed, Ferguson disavowed knowledge of the package or its contents; Ferguson disavowed knowing anyone by the sender's

6

name or knowing anyone in San Bernardino. (R. 36 at PageID 269-270). A defendant who is neither the sender nor the addressee of a package has no privacy interest in it, and, accordingly, no standing to assert Fourth Amendment objections to its search. See *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988); *United States v. Givens*, 733 F.2d 339, 341–42 (4th Cir. 1984) (no reasonable expectation of privacy in package addressed to another); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (no privacy interest in package sent to another where defendant disassociated himself from the package); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (defendant who was neither the sender nor addressee had no privacy interest in package).

Ferguson claims that he has standing because the package was addressed to his residence and further claims that the package was addressed to his minor child. However, Fourth Amendment rights are personal and may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). A party generally lacks standing to assert violations of his children's constitutional rights. See *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003).

Defendant claims that there was insufficient justification to seize and detain the package. "[T]he Fourth Amendment is not implicated when only external features of a package, like the address labels are examined; there is no reasonable expectation of privacy that the outside of a package given to a mail-carrier will be kept private." *United States v. Hoang*, 486 F.3d 1156, 1159–60 (9th Cir. 2007). "Similarly, the Fourth Amendment is not implicated by the use of a dog sniff by a trained dog to detect contraband in a package." Id. at 1160; see also *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("[T]he use of a well-trained narcotics detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view,'—during a lawful traffic stop, generally does not implicate legitimate privacy interests.") (citation omitted).

The temporary detention of mail can become an unreasonable seizure within the meaning of the Fourth Amendment. *United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970). However, temporarily removing an item from the mail stream does not rise to that level absent meaningful interference with Defendant's possessory interest. *United States v. Gant*, 112 F.3d 239, 241 (6th Cir. 1997). "An addressee's possessory interest is in the timely delivery of a package, not in 'having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time.'" *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002) (quoting *United States v. Demoss*, 279 F.3d 632 (8th Cir. 2002). "[O]nly reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004).

Reasonable suspicion is a level of suspicion "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). In evaluating whether suspicion is reasonable, "we must consider the totality of the circumstances—the whole picture." Id. at 8, (internal quotation omitted). Even where each factor cited by law enforcement to support a seizure is "not by itself proof of any illegal conduct and is quite consistent with innocent" activity, the sum of the factors taken together can amount to reasonable suspicion. Id. at 9.

Here, postal inspectors noted multiple factors giving rise to reasonable suspicion including excessive tape including over the seams, shipped from a known drug source location, crossed off and rewritten recipient name, handwritten label, recipient zip code known to receive narcotic packages, use of Priority Mail service, and cash payment. (R. 32 at PageID 160, 175-176; R. 36 at

8

PageID 231-235). Those factors caused a temporary removal of the package from the mail stream for further inspection. That further inspection involved running the sender's and recipient's names through a database to verify if the names were associated with the addresses. (R. 32 at PageID 160-161; R. 36 at PageID 235-236). When neither name was associated with the respective address and learning the sender street did not exist (there was no North Aster Street – only an Aster Street) (R. 32 at PageID 161; R. 36 at PageID 236], law enforcement had developed additional reasonable suspicion justifying the further detention of the package while waiting for a narcotics-detection canine to arrive and conduct a free air sniff. Under the totality of the circumstances, there was justification to temporarily detain the package while obtaining a narcotics-detection canine for a free air sniff.

Defendant further argues that the canine "search" was unreasonable. Defendant questions the narcotic-detection K9's reliability and points to a typographical error on the certification document as evidence that Jax was not certified at the time. However, evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.

If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. *Florida v. Harris*, 568 U.S. 237, 246-247 (2013). Furthermore, "[w]hile training and performance documentation would be useful in evaluating a dog's reliability, . . . the testimony of [the canine] handler, [can] sufficiently establish[ a] dog's reliability." *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994).

Sgt. Bemis testified regarding his twenty years as a K9 handler. (R. 36 at PageID 312). He

explained how Jax is his third K9 and that Jax is a dual purpose K9 as he is patrol related and special purpose. (Id.). Sgt. Bemis also related his experience as a K9 trainer and international drug interdiction instructor as well as his positions as past president of the United States Police Canine Association and current president of the Ohio Law Enforcement K9 Association. (Id. at PageID 318-319). Sgt. Bemis noted that Jax had been certified every year since April 2016 but that his certification from April 18, 2019 had a listed expiration date of April 22, 2019 – only four days later. (Id. at PageID 323-324).

All of Jax's previous certifications were for a full calendar year. (Id.]. Sgt. Bemis explained how that was a typographical error that he had not previously noticed until this case and that he has been attempting to get a corrected certification. (Id. at PageID 348, 361-362). The corrected certification (Government Exhibit 7), covering a full year's timeframe including the date of the free air sniff in this matter, was provided to the Court and to defense counsel subsequent to the hearing. (R. 35-1).

Sgt. Bemis explained that the Montgomery County Sheriff's Office had a 16 hour per month training requirement for dual purpose K9's. (Id. at PageID 327). He played a role in creating that policy because that appeared to be a basic general average nationwide. (Id. at PageID 362). He explained that they trained eight hours every two weeks. (Id.).

Additionally, Sgt. Bemis credibly testified that Jax was a good drug detection dog, and "very reliable." (Id. at PageID 358, 366-367). Sgt. Bemis testified he has never felt that he needed to seek additional training for Jax due to issues of reliability. (Id. at PageID 366-367). Sgt. Bemis indicated that Jax has never failed to certify and has never failed to work through issues with regards to training. (Id. at PageID 329). Sgt. Bemis indicated he had no concerns with regards to

10

Jax and his abilities to detect the odor of narcotics. (Id.).

Jerry Potter, defendant's expert witness, acknowledged that there is no national standard for training requirements. (Id. at PageID 395). Potter further acknowledged that a dog could be reliable on less than 16 hours of training. (Id.). Potter acknowledged he had not spoken with anyone at the Montgomery County Sheriff's Office to get a complete understanding of the training requirements or the remedy for missing a training – he acknowledged relying solely on the paper document of the policy. (Id. at PageID 401-402). Finally, Mr. Potter acknowledged there was nothing annotated in Sgt. Bemis' training records of Jax that would cause concern with regards to Jax's reliability. (Id. at PageID 395). Potter's only complaint was that the training records were vague and demonstrated that Jax has not met each and every hour of the written training policy for every month of his use. (Id. at PageID 410-415).

The Court credits Sgt. Bemis' day-to-day knowledge and expertise in using Jax for drug detection. Thus, the Court will reject Defendant's challenge to the Jax's reliability.

Next, Defendant claims that the warrants obtained in this matter (Gov't Exhibits 2, 4, and 6) contained deliberate falsehoods or statements made with reckless disregard for their truth and further claims that these statements were material to the determination of probable cause. (R. 38, Defendant's Motion to Suppress, PageID 430). Defendant takes issue with several matters: (1) that while Inspector Brad Dorman's affidavit states that he conducted certain name searches, Inspector Joe Rossiter actually conducted the name searches, (2) that the affidavit stated K9 Jax was a properly trained and certified narcotics canine, and (3) that the affidavit listed the sender's address as being in San Diego rather than San Bernardino. (Id. at PageID 430-433).

None of the issues raised by Defendant amount to deliberate falsehoods or statements made

11

with reckless disregard for their truth. Furthermore, none of the claimed errors were material to the determination of probable cause.

If a defendant establishes that a false statement was made either knowingly and intentionally or with reckless disregard for the truth and that the false statement was necessary to the finding of probable cause, the false statements must be excised and a determination made whether the affidavit is still sufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). "An affidavit, with the false part excised, will still establish probable cause if it 'provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at' the stated location." *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013).

Defendant objects to Inspector Dorman's affidavit which claims that Inspector Dorman did the name searches. During the hearing, Inspector Dorman and Inspector Rossiter acknowledged that Inspector Rossiter typed the affidavit for the most part and conducted the name search as he was working remotely while Inspector Dorman seized the package and swore out the affidavit. Inspector Dorman's actions in failing to correct the affidavit to reflect that Inspector Rossiter conducted the name search were negligent. However, even if Defendant's assertion that this misstatement regarding who conducted the name searches was done with reckless disregard for the truth, the results of the search were true; only the identity of the person conducting the search was incorrect. The identity of the postal inspector conducting the name search is not material to the magistrate's finding of probable cause – if no inspector were identified by name and the affidavit merely stated that a name search was conducted with the results, that would have had no impact on the finding of probable cause. Going further, even if the information regarding the

negative results on the name search were completely excised from the affidavit, there was still sufficient information remaining in the affidavit to give rise to probable cause.

Defendant next claims that that the affidavit stated K9 Jax was a properly trained and certified narcotics canine, which Defendant claims is not true. However, Jax was certified as a narcotics-detection canine. Furthermore, Sgt. Bemis testified Jax was properly trained. Sgt. Bemis testified as to Jax's training and his training records, and explained that some scheduled training days get missed due to sick days or vacation leave and that the policy is silent on those situations. (R. 36 at PageID 363). However, the general practice of the canine unit within the Montgomery County Sheriff's Department was that a missed day does not need to get made up. (Id.). Sgt. Bemis explained it was a manpower issue as the Montgomery County Sheriff's Office's practice requires the training to be a formalized training with a trainer in charge, which is also not specifically stated in the written policy. (Id. at PageID 364).

Defendant has not established that Jax was not "properly trained." Sgt. Bemis testified that Jax was trained in compliance with the Montgomery County Sheriff's Office policy and practice. Defendant has failed to contradict Sgt. Bemis' statement that Jax is properly trained.

Assuming arguendo that the statement was not true, Inspectors Dorman and Rossiter both testified that they believed Jax to be both certified and properly trained. (R. 32 at PageID 202-204; R. 36 at PageID 283). Additionally, Sgt. Bemis signed an affidavit attached to the search warrant affidavit that stated Jax was properly trained. (Gov't Exhibit 2). Thus, Inspector Dorman's affidavit regarding Jax was not deliberately false – he believed that Jax was certified and properly trained. Nor were the statements made with reckless disregard for the truth – postal inspectors had been provided information that Jax had been properly trained. As Defendant cannot establish that

he has met the first prong (knowing and intentional false statement or statement made with reckless disregard) there is no need to consider whether there was sufficient probable cause should the information be excised.

Finally, Defendant cites to the error in the affidavit that listed the sender's address of San Diego rather than San Bernardino. The government acknowledges that this was an error. The package in fact listed San Bernardino when the affidavit listed San Diego. Inspector Rossiter did not include San Diego with the intent to be deceptive, but rather it was merely a mistake on his part when utilizing the computerized affidavit form. (R. 36 at PageID 251).

Subsequent statements about the location being a known source location were true – Inspector Dorman explained that he would consider the entire southern California area to be a known drug source so that San Diego and San Bernardino would both be looked at similarly as drug source locations. (R. 32 at PageID 207-208). Inspector Rossiter's actions were negligent in failing to ensure the city was listed accurately. See *United States v. Brown*, 732 F.3d 569 (6th Cir. 2013) (noting that, at most, agent's statement that he "must have typed it up wrong" merely shows negligence). See also *United States v. Colquitt*, 604 Fed. Appx. 424, 430 (6th Cir. 2015) (finding the agent's errors in criminal history and details of drug buys to be negligent and noting negligent errors do not require a court to consider whether, setting aside the challenged statements, that the affidavit still had probable cause).

Excising the statement regarding the name search and the sender's actual city, the affidavit would still have sufficient information giving rise to probable cause. Thus, Defendant's argument has no merit and will be denied.

Finally, Defendant claims that law enforcement exceeded the scope of the warrant because

14

the warrant did not authorize the curtilage or Defendant's vehicle. (R. 38 at PageID 433-434). Defendant further claims that the warrant expressly required an additional warrant for a vehicle if the package were taken into the vehicle. (Id.). Defendant's argument conflates the circumstances in which a new warrant was to be obtained.

The affidavit for 225 Gramont Avenue was an anticipatory warrant. (Gov't Exhibit 4A). Inspector Rossiter explained that if the package had been removed from 225 Gramont Avenue and taken into a vehicle that the current warrant would allow law enforcement to stop the vehicle as it leaves the area of 225 Gramont Avenue and obtain a new warrant for that vehicle. (R. 36 at PageID 249, 307). This scenario occurs when the package never enters 225 Gramont Avenue and the "triggering" condition of the anticipatory warrant does not occur. Postal inspectors included outbuildings and curtilage both on the face of the affidavit as well as in the body of the affidavit at paragraph 2. (R. 36 at PageID 301, Gov't Exhibit 2). Inspector Rossiter sought authority for outbuildings and curtilage and believed he was authorized to search the vehicle as it was located within the curtilage and the language of the warrant covered the curtilage. (R. 36 at PageID 293, 301-302).

In the present matter, the triggering condition was met – Defendant took the package into 225 Gramont Avenue. The vehicle in question was located within the driveway of 225 Gramont Avenue – within the curtilage. The affidavit covered the curtilage. Under Sixth Circuit authority, a search is authorized "of a car on the premises, even where the search of vehicles was not expressly included in the wording of the warrant, regardless of whether it was owned or controlled by the owner of the premises searched." *United States v. Thompson*, 91 F.3d 145 (6th Cir. 1996); *United States v. Combs*, 468 F.2d. 1390 (6th Cir. 1972).; *United States v. Scott*, 2018 WL 2197911

(E.D. Mich., 2018). As such, the search of this vehicle was authorized. Thus, law enforcement's entry into Defendant's vehicle within the curtilage was proper and within the scope of the warrant.

**III.     Conclusion**

Because Defendant does not have standing to challenge the inspection of mail addressed to someone else, and because, even if he had standing, the search was reasonable, and because no deliberate or reckless falsehoods were made in the warrant application, and because the alleged falsehoods were not material to the issuance of the warrant, and because a warrant to search curtilage allows searches of vehicles in the curtilage, Defendant's Motions to Suppress, Docs. 19, 29, are **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio on Monday, October 18, 2021.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE